**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**FRANKFORT**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:22-cr-00003-GFVT-MAS-1 |
| v. ) | |
| ) | |
| **DAVID ALLEN KIPER,** ) | |
| ) | |
| Defendant. ) | |

**DETENTION OPINION & ORDER**

The Indictment alleges that Defendant David Allen Kiper ("Kiper") coerced a minor to engage in sexually explicit conduct for the purpose of producing visual depictions of that conduct in violation of 18 U.S.C. § 2251(a) on two occasions and that, on a third occasion, he possessed visual depictions of a minor engaging in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(4)(B). [DE 1]. The United States orally sought detention per 18 U.S.C. 3142(f)(1)(E). [DE 7]. The Court conducted a detention hearing and afforded both sides all rights outlined in the Bail Reform Act ("BRA"). [DE 11]. Per Federal Rule of Appellate Procedure 9(a) and for the reasons discussed in this opinion, the BRA requires Kiper's detention.

**I.     BRA FRAMEWORK**

Given the charges, a detention presumption arises under the BRA as to both nonappearance and danger risk. 18 U.S.C. § 3142(e)(3)(E). The BRA and *United States v. Stone*, 608 F.3d 939, 945–46 (6th Cir. 2010), frame the resulting inquiry. The presumption imposes on the defendant a threshold "burden of production"; in response, "he must introduce at least some evidence" that he poses neither a flight nor a danger risk. *Stone*, 608 F.3d at 945; *see also United States v.*

1

*Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (imposing a responsive burden on the defendant to produce "some evidence that he will not flee or endanger the community if released"); *United States v. Hernandez*, No. 1:02-CR-006, 2002 WL 1377911, at *2 (E.D. Tenn. Feb. 27, 2002) (requiring the defendant to "produc[e] probative, credible evidence to rebut the presumption and support his contention that he will appear . . . and [that] he does not pose a danger"). The production burden "is not heavy," and the Government retains the ultimate burden of persuasion. *Stone*, 608 F.3d at 945. An unrebutted presumption requires detention. A rebutted presumption remains a pro-detention statutory factor. *See id.* ("The presumption remains as a factor because it . . . reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial.").

Where a defendant rebuts the presumption, the burden shifts back to the United States. Detention premised on nonappearance requires preponderant evidence of flight risk. *See, e.g.*, *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Curry*, No. 6:06-CR-82-DCR, 2006 WL 2037406, at *6 (E.D. Ky. Jul. 18, 2006). Danger-based detention, however, demands clear and convincing evidence that no combination of conditions will reasonably ensure community safety. 18 U.S.C. § 3142(f). The analyses are distinct. Conditions that sufficiently target nonappearance risk may not adequately address danger potential. *See United States v. Mercedes*, 254 F.3d 433, 436-37 (2nd Cir. 2001). Further, condition effectiveness inherently hinges on a defendant's predicted good faith compliance. *See United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) (characterizing predicted compliance as critical release component); *United States v. Hir*, 517 F.3d 1081, 1092 (9th Cir. 2008) (noting the "critical flaw" in a set of proposed release conditions: "In order to be effective, they depend on [the defendant's] good faith compliance."); *id.* at 1093 n.13 (observing that, barring a "replica detention facilit[y],"

the success of any condition combination necessarily "hinge[s] on [the defendant's] good faith compliance").

Evidence rules do not apply in the detention hearing context. 18 U.S.C. § 3142(f). The key is simply evidentiary reliability and accuracy. *See, e.g.*, *United States v. Webb*, 149 F.3d 1185 (Table), No. 98-1291, 1998 WL 381686, at *1 (6th Cir. June 22, 1998). Given hearing informality, the Court properly considers a wide range of proof. The nature and quality of proof, though, impacts its probative value and weight in the detention calculus. The § 3142(g) factors ultimately drive the overarching analysis.[1]

---

[1] The subsection directs the Court to balance the following:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
(2) the weight of the evidence against the person;
(3) the history and characteristics of the person, including--
(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

## II.    ANALYSIS

Kiper rebutted the presumption as to both nonappearance and danger risks. The Government has not shown, by a preponderance of the evidence, that Kiper presents a risk of flight or nonappearance. However, based upon the balance of BRA factors, the Court finds that the United States has demonstrated by clear and convincing evidence that no combination of conditions can adequately address Kiper's serious risk of danger to the community or reasonably assure the safety of others under the circumstances. Danger-based detention is warranted.

### A.    RISK OF FLIGHT

To rebut the presumption as to flight or nonappearance, Kiper presented testimony from his half-sister, Christina Virgin ("Virgin"). [DE 12; Pretrial Services Report ("PSR") at 1]. Virgin testified that Kiper has been residing with her and her three children (aged 16, 17, and 18 years old) at her home in Frankfort, Kentucky for nearly one year. [Hearing Recording at 02:15]. During that time, Kiper has been on pretrial release in connection with the related state case, and Virgin testified that he has appeared at all state proceedings as directed. [*Id.* at 02:55-03:10]. Kiper has otherwise lived in and around the central and northern Kentucky areas for his entire life. [PSR at 2]. This evidence rebuts the presumption as to flight or nonappearance risk. *See* 18 U.S.C. § 3142(g)(3)(A) (considering the defendant's record concerning court appearances and length of residence in the community).

In turn, the United States, considering the balance of relevant BRA factors[2] and the conditions available, has not shown by a preponderance of the evidence that no conditions can

---

[2] The fourth BRA factor, the nature and seriousness of the danger risk, is not applicable in this context and the Court omits it from the flight analysis.

reasonably assure that Kiper will appear in this case. The Government did not seriously argue otherwise.

The first factor, the nature and circumstances of the offenses charged, weighs in favor of detention based on flight. 18 U.S.C. § 3142(g)(1). Though Kiper rebutted the presumption, it remains a pro-detention consideration in both the flight and danger contexts. *Stone*, 608 F.3d at 945. Additionally, the mandatory minimum 15-year imprisonment terms accompanying Counts 1 and 2 in this case incentivize flight to some degree. *See United States v. Shuklin*, No. 19-4171, 2020 WL 2992522, at *1 (6th Cir. Mar. 18, 2020) (observing that "significant penalties . . . provide a strong incentive to flee").

The second factor, however, does not weigh in favor of detention based on flight. The second factor is "the weight of the evidence against the person[.]" 18 U.S.C. § 3142(g)(2). In the flight context, this looks only toward the weight of flight risk evidence, not toward the weight of proof of Defendant's guilt. *See United States v. Sykes*, No. 04-cr-80623, 453 F. Supp. 3d 1011, 1015–16 (E.D. Mich. Apr. 13, 2020) (citing *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010)) (noting that, in this Circuit, the § 3142(g)(2) factor looks only to the weight of the evidence that the defendant is a flight risk or a danger); *accord United States v. Sanders*, 466 F. Supp. 3d 779, 785 (E.D. Mich. 2020). There is negligible proof on this record that Defendant would flee or fail to appear. Defendant has no prior failures to appear or criminal history associated with fleeing or evading prosecution. Moreover, the record and Virgin's testimony indicate that he has in fact appeared for court and not fled while on state bond for the related offenses during the past year.

The third and final flight factor also would favor release. Kiper has resided in the central and northern Kentucky areas for his entire life, and he maintains close relationships and frequent contact with his mother and his half-sister (Virgin) that both reside locally. [PSR at 1-2]. He has

no history of international travel or apparent resources to flee.  He also lacks any substance use disorder.  *Cf. United States v. Valentin-Cintron*, 656 F. Supp. 2d 292, 296 (D.P.R. 2009) (observing that a "frequent drug user . . . constitutes a 'flight risk.'").  And, though not entirely consistent, Kiper does have some work history.  Most critically, though, as discussed, Kiper does not have any history of failing to appear, violating court-impost conditions, or engaging in fleeing or evading law enforcement; indeed, his record concerning the related state bond suggests that he does appear as directed.  For these reasons, this factor favors release.  *See* 18 U.S.C. § 3142(g)(3)(A) (considering the defendant's past conduct and record, employment, substance use disorder history, length of residence in the community, family ties, and history of appearances).

Given the low likelihood of flight or nonappearance on this record, the Court is confident that conditions such as home detention at Virgin's residence and electronic monitoring could reasonably assure Kiper's appearance at all future proceedings in this case, despite the lengthy penalties and serious alleged offenses at issue.  *See United States v. Demmler*, 523 F. Supp. 2d 677, 684 (S.D. Ohio 2007) (finding that GPS monitoring could "adequately alert law enforcement if [the defendant] attempts to flee" and concluding that "given the otherwise low likelihood of flight[,]" it would adequately safeguard against any nonappearance risk).  The United States thus has not shown by a preponderance that no conditions can reasonably guard against flight, and detention on this basis is unwarranted.

**B.    RISK OF DANGER**

Though barely, Kiper also overcame the presumption as to danger risk.  Kiper emphasized his lack of adult criminal history and his compliance while on pretrial release for the related state offenses.  Virgin further testified to her likely ability to limit and monitor wireless internet and device access if Kiper were released to her home.  These facts present some credible, probative

6

evidence that conditions could potentially protect the community upon Kiper's release; they thus meet the low production burden to overcome the presumption. *Dominguez*, 783 F.2d at 707 (demanding "some evidence" the defendant is not a danger to the community in presumption cases); *Hernandez*, 2002 WL 1377911, at *2 (requiring "probative, credible evidence to rebut the presumption"). However, though rebutted, the presumption remains as a pro-detention factor in the overall danger analysis. *See Stone*, 608 F.3d at 945.

For the reasons discussed below, each of the BRA factors weighs in favor of finding that Defendant presents a serious risk of danger to the community. Moreover, the proposed release conditions (including release to a residence with minors) do not reasonably assure the Court that Defendant will not threaten the safety of others if released. Accordingly, the United States has proven by clear and convincing evidence that no conditions can reasonably assure community safety.

    **1.**    <u>**Nature and Circumstances of the Offense**</u>

The first BRA factor is the "nature and circumstances of the offense charged, including whether the offense . . . involves a minor victim[.]" 18 U.S.C. § 3142(g)(1). The alleged offenses in this case are among a category of offenses that Congress has deemed particularly dangerous and typically appropriate for pretrial detention. The nature of the offenses thus weighs in favor of detention. The alleged offense circumstances here, involving Defendant's own child under the age of four, are further extremely dangerous and aggravating. *See United States v. Downsbrough*, No. 3:13-CR-61, 2013 WL 2447858, at *1 (E.D. Tenn. June 5, 2013) (concluding that "the nature and circumstances of the offense weigh[ed] in favor of detention because the charged offenses involve[d] minor victims"); *United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003) (observing that "[d]etaining adults who prey on children for the adult's sexual gratification . . . is [ ] a

legitimate government objective" justifying pretrial detention); *United States v. Demarcus Bristuan Fitzhugh*, 2016 WL 4727480, at *5 (E.D. Mich., Sept. 12, 2016) ("*Just one* sexually-related offense against *just one* minor is enough to imply dangerousness.") (emphasis in original); *United States v. Music*, No. 107-CR-21-R, 2007 WL 2067057 (W.D. Ky. July 16, 2007) (revoking an order releasing a defendant pending trial when defendant was guilty of an offense against a minor, but had no prior criminal history).

Accordingly, the first factor is strongly pro-detention.

### 2. Weight of the Evidence of Dangerousness

The next consideration gauges "the weight of the evidence against the person." 18 U.S.C. § 3142(g)(2). "This factor goes to the weight of evidence of dangerousness, not the weight of the evidence of defendant's guilt." Stone, 608 F.3d at 948. Based on Defendant's self-described "addiction" to interacting with child sexual abuse material, his juvenile history of engaging in actual sexual abuse of young children, and his admitted abuse of his child and use of child sexual abuse images to curb abuse of actual children, the record demonstrates that he presents a serious risk of danger to children and others if released.

At the detention hearing, Kentucky State Police Detective Wilmer Gatson ("Detective Gatson") testified that investigators became aware of Kiper when he was flagged as communicating on a Russian image site in conversations concerning abuse of minors. [Hearing Recording at 09:15]. Law enforcement ultimately obtained and executed a search warrant at Kiper's residence, and Kiper spoke with investigators, admitting that they would locate certain child sexual abuse images on his electronic devices. [Id. at 11:00]. Among the files, Kiper advised, investigators would find a video of him engaging in the masturbation of his own three-year-old son. [Id. at 18:00-19:00].

8

Ultimately, during the course of the interview with law enforcement, Kiper conceded that he was attracted to his son, that he found it difficult to resist sexually abusing him at times, that he had a sexual preference for children aged three, and that he would view child sexual abuse images to avoid engaging in actual physical abuse of minor children. [Id. at 13:00-14:00]. Unfortunately corroborating Kiper's admitted difficulty restraining himself from engaging in child sexual abuse conduct is his juvenile history. [PSR at 4]. As a teenager (age 16 or 17), Kiper sexually abused a 3-year-old that a family member was babysitting and again abused a 12-year-old child while at a group home as a result of the former offense. [Id.; Hearing Recording at 16:55].

For these reasons, the second factor firmly favors Kiper's detention based on danger.

### 3. **History and Characteristics of the Person**

The third factor focuses on the defendant's history and characteristics. *See* 18 U.S.C. § 3142(g)(3). Despite some mitigating aspects of Defendant's history and characteristics, this factor nonetheless on balance favors detention given the pattern of similar conduct and Defendant's admitted difficulty refraining from it. Defendant's background reflects a serious danger concern that, though regrettably possibly rooted in personal childhood abuse trauma per the record, tips the third BRA factor toward danger under the statutory analysis.

On the mitigating side of the spectrum is Defendant's support from his mother and from Virgin. His family's involvement in his life and investment in his success would likely promote compliance if released. Additionally, Kiper lacks any criminal history as an adult. Finally, Kiper's recognition of his criminal tendencies, his desire to seek help and to cease that behavior, and his overall cooperative conduct with law enforcement are favorable to him.

However, weighing more heavily in favor of detention is the dangerous pattern evinced by Defendant's apparent repeated return to sexual conduct with very young children—particularly

vulnerable children in his own care or in the care of others surrounding him. Despite the juvenile nature of Defendant's criminal history, the predatory pattern demonstrated by it and the instant allegations is concerning. Moreover, Defendant's admission of difficulty controlling himself around young children, including his son, and his use of child sexual abuse images to avoid engaging in physical abuse signals a serious problem and danger. Accordingly, and despite Defendant's recognition of these issues and his honesty in communicating with investigators, the third factor weighs in favor of detention based on danger risk.

### 4. Nature and Seriousness of the Danger

The fourth and final factor is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). Defendant has shown himself to be dangerous to children that are left vulnerable to him, including his own child, on multiple occasions over a span of many years. Of course, offenses involving actual physical contact with children present an undeniably grave danger, the seriousness of which cannot be overstated. However, even where there is no contact with an actual child, courts have found that engaging with child exploitation materials causes real, lasting harm to real victims and may warrant detention based on danger under the BRA. *See United States v. Pece*, No. 1:20-CR-186-1, 2020 WL 6263640, at *6–7 (N.D. Ohio Oct. 23, 2020) (recognizing the danger of such images because they "permanently records the victim's abuse, and [their] continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years"); *see also United States v. Kinison*, No. 5:12-CR-57-JBC-REW, 2012 WL 4433296, at *4 (E.D. Ky. Sept. 24, 2012) (finding substantial danger risk where evidence demonstrated that the defendant had "a plain, prurient interest in children" and had been handling child exploitation materials).

Accordingly, because the danger in this case stems from a self-described "addiction" to child sexual abuse material and involves serious risk of both contact with actual children and of possession of exploitative images, the fourth danger factor weighs in favor of detention.

### 5. Availability of Mitigating Conditions

Lastly, the Court concludes that no combination of available conditions adequately guards against the danger that Defendant presents. Most concerningly, Defendant proposes to be released to Virgin's home, where two teenage minor children reside. Virgin further testified that, though visitors to the home are infrequent, the children do at times have other minor teenage friends over at the home. That these children are slightly older than the age range Defendant has admitted prurient interest in does little to provide the reasonable safety assurances required by the BRA. Nor does the lack of any known abuse incidents during Defendant's time at the residence during state pretrial release meaningfully assuage the concern. Rather, given the nature and seriousness of the dangers here, release to a home with minor children of any age does not adequately assure the safety of others in the Court's view.[3]

Additionally, as Virgin testified that she and her children each have their own electronic devices at the home, the Court is not persuaded that it could adequately limit and monitor Defendant's access to the internet and to devices. Virgin testified that, though she does not have wireless internet at her residence, her neighbors do have such access, but their accounts and connections are typically password-protected. In any event, given the ubiquity of data-accessible cellular and other electronic devices at Virgin's home (in the possession of minor children), as well as the presence of neighboring wireless internet connections, the Court is not confident that

---

[3] Defendant did not suggest release to his mother's home, and the record reveals nothing of the environment or release prospects there.

it could sufficiently monitor and restrict Defendant's data and device access at the proposed location. *See, e.g.*, *United States v. Foster*, No. 20-5548, 2020 WL 6791572, at *3 (6th Cir. July 20, 2020), *cert. denied*, 141 S. Ct. 1073, 208 L. Ed. 2d 533 (2021) (emphasizing the inherent difficulty in limiting and policing a child exploitation defendant's device and internet use in light of modern technology).

Ultimately, in considering release to Virgin's residence as proposed, the Court is not reasonably assured that it can successfully limit either Kiper's contact with actual minor children or his access to the internet and to electronic devices. The Government has thus shown by clear and convincing evidence that no conditions can address the serious risk of danger that Kiper presents.

### III.     CONCLUSION

For the stated reasons, the Court finds that there are release conditions that can reasonably assure Kiper's appearance at future proceedings. The Court also finds, however, that the United States has shown by clear and convincing evidence that no such conditions could reasonably assure the safety of others and of the community in this case.

Accordingly, the Court **GRANTS** the United States' oral detention motion. Defendant shall remain in custody pending trial. The parties may appeal this Order under the terms of 18 U.S.C. § 3145(a).

Entered this the 29th day of March, 2022.



Signed By:
Matthew A. Stinnett   MAS
United States Magistrate Judge